**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                      No. CR 09-3447 JB

DAMON LARGO,

       Defendant.

**AMENDED MEMORANDUM OPINION AND ORDER[1]**

**THIS MATTER** comes before the Court on: (i) the Defendant's Sentencing Memorandum, filed July 15, 2011 (Doc. 47)("Largo Memorandum"); (ii) the Objection to Proposed Condition of Supervised Release, filed July 19, 2011 (Doc. 49)("Objection"); and (iii) the United States' Sentencing Memorandum, filed July 28, 2011 (Doc. 50)("U.S. Memorandum").  The Court held sentencing hearings on July 27, 2011 and November 30, 2011.  The primary issues are: (i) whether the Court should accept the Plea Agreement, filed April 21, 2011 (Doc. 42); and (ii) whether the Court should impose a condition of release which prohibits Largo from being in contact with children under eighteen years of age without his probation officer's prior approval.  The Court will grant the requests in the Largo Memorandum and the U.S. Memorandum.  The Court will accept the Plea Agreement pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and will impose a sentence of 12-months and one-day of imprisonment in accordance with that agreement.  With respect to the Objection, the Court will sustain the Objection to Proposed Special Condition Number 5 of the conditions of supervised release, because the United States has not established that

---

[1]The Court files this Amended Memorandum Opinion and Order to correct an error and change the word "possibly" on page 24 to "reasonably."

there are "compelling circumstances" to justify this interference with Defendant Damon Largo's significant liberty interest in his familial relationships.

## FACTUAL BACKGROUND

Largo is an enrolled member of the Navajo Nation and holds himself out as an Indian. See Plea Agreement ¶ 8, at 3.  In February of 2008, Largo was at his home located near White Horse, New Mexico, which is within the boundaries of the Navajo Nation.  See Plea Agreement ¶ 8, at 3.  Largo was in his kitchen with J.L., his eleven-year old niece, when he put his hand down the front of her pants and rubbed her genital area for approximately one minute.  See Plea Agreement ¶ 8, at 3.  His hands were inside her pants and underwear, touching her skin.  See Plea Agreement ¶ 8, at 3.  Largo admits that his actions were with an intent to abuse, humiliate, harass, and degrade J.L., and to gratify his own sexual desires.  See Plea Agreement ¶ 8, at 3.

## PROCEDURAL BACKGROUND

On December 3, 2009, a federal grand jury indicted Largo on two counts: (i) knowingly engaging in a sexual act with J.L., who had not yet attained the age of twelve years, by intentionally touching her genetalia, in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(D); and (ii) knowingly engaging in sexual contact with J.L., who had not yet attained the age of twelve years, by intentionally touching her buttocks and breasts, in violation of 18 U.S.C. §§ 1153, 2244(a)(5), 2246(3).  See Redacted Indictment, filed December 3, 2009 (Doc. 2)("Indictment").  On April 21, 2011, Largo pled guilty to Count II of the Indictment, that being abusive sexual contact of a child under twelve years of age, in violation of 18 U.S.C. § 2244(a)(5).  Plaintiff United States of America and Largo stipulate to a specific sentence of 12-months and one-day of imprisonment.  See Plea Agreement ¶ 10(a), at 4.  Largo agrees not to seek a downward departure, variance, or deviation of any kind from the agreement upon sentence.  See Plea Agreement ¶ 10(a), at 4.

On June 30, 2011, the United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") on Largo.  In the PSR, the USPO calculates Largo's total offense level as 38.  See PSR ¶ 32, at 9.  Largo's base offense level is 30 pursuant to U.S.S.G. § 2A3.4(a)(3).  See PSR ¶ 23, at 7.  The PSR includes a 4-level upward adjustment, as U.S.S.G. § 2A3.1(b)(2) requires, because J.L. had not yet attained the age of twelve.  See PSR ¶ 24, at 8.  The PSR also includes a 2-level upward adjustment, pursuant to U.S.S.G. § 2A3.1(b)(3)(A), because J.L. was under Largo's supervisory control at the time of the offense.  See PSR ¶ 25, at 8.  The PSR then increases Largo's offense level 5-levels under U.S.S.G. § 4B1.5(b)(1), because Largo admitted to touching J.L. on at least two occasions and J.L. stated that he had touched her inappropriately since she was seven-years old.  See PSR ¶ 29, at 8.  The PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Largo's acceptance of responsibility.  See PSR ¶ 31, at 9. The PSR calculates Largo's criminal history category as I, based on 0 criminal history points.  See PSR ¶ 36, at 9.  The PSR determines that a total offense level of 38 and a criminal history category of I establishes a guideline of imprisonment range of 235 to 293 months imprisonment.  See PSR ¶ 54, at 12.  On July 11, 2011, the USPO disclosed the Addendum to the Presentence Investigation Report to correct some information in the PSR.  See Addendum to the Presentence Investigation Report (disclosed July 11, 2011).

On July 15, 2011, Largo filed his sentencing memorandum.  See Doc. 47.  Largo urges the Court to accept the Plea Agreement.  See Largo Memorandum at 1.  Largo asserts that, had his case proceeded to trial, the weaknesses in the United States' case may have resulted in acquittal. See Largo Memorandum at 1.  Largo represents that he would have attacked the validity of the statements he made in an interview and that he would present a note, which he asserts J.L. wrote, stating: "Will you get mad[,] If I say I am lyin [sic][,] Because . . . I'am [sic][.] Jacie[.]"  Largo

Memorandum at 2.  Largo argues that the United States would have significant difficulty at trial, because there are circumstances which would have cast doubt on J.L.'s veracity and because J.L. has expressed her desire not to proceed to trial.  See Largo Memorandum at 3.  Largo also asserts that the specific sentence stipulated to in the Plea Agreement constitutes significant punishment, that he has never been involved in the criminal justice system before this case, and that he will have to register as a sex offender.  See Largo Memorandum at 3-4.

On July 19, 2011, Largo filed his Objection.  See Doc. 49.  Largo objects to one of the proposed conditions of supervised release, which states that "Defendant must not have contact with children under the age of 18 without prior written permission of the probation officer."  Objection at 1.  Largo asserts that he has three children under the age of 18 and that there are no allegations that he has abused his own children.  See Objection at 1.  Largo argues that this condition is not reasonably related to the prospect of deterring his criminal conduct, protecting the public, or providing him with correctional treatment.  See Objection at 2.  Moreover, Largo contends that this provision offends the parsimony principle of 18 U.S.C. § 3585(d)(2), because it involves a greater deprivation of liberty than is reasonably necessary to achieve the purposes of punishment.  See Objection at 2.  Largo cites United States v. Edgin, 92 F.3d 1044 (10th Cir. 1996), as support for his position and argues that the United States Court of Appeals for the Tenth Circuit has held that a special condition regarding a defendant's son implicates the defendant's liberty.  See Largo Memorandum at 2-3.  Largo asserts that J.L. disclosed the abusive contact in February 2008, but that the FBI did not interview Largo until April 2008, and that the United States did not seek an indictment until December 2009.  See Largo Memorandum at 4.  He argues that, when he was released on December 15, 2009, neither the Honorable Daniel Schneider, United States Magistrate Judge, nor the USPO suggested that his contact with his children should be limited.  See Largo

-4-

Memorandum at 4.  Largo contends that he does not present a danger to his children.  <u>See</u> Largo Memorandum at 6.

On July 25, 2011, the United States filed its sentencing memorandum.  <u>See</u> Doc. 50.  The United States asserts that it would have faced significant evidentiary hurdles if the case had proceeded to trial.  <u>See</u> U.S. Memorandum at 2.  The United States represents that the victim and her mother were unwilling to cooperate in a meaningful way in the judicial process.  <u>See</u> U.S. Memorandum at 3.  The United States also states that there are ancillary details related to the victim that resulted in the Plea Agreement, which it asserts it is willing to disclose ex parte to the Court. <u>See</u> U.S. Memorandum at 3.

On July 26, 2011, the Court entered a minute order altering Special Conditions Number 4 and Number 6 of the proposed conditions of supervised release.  <u>See</u> Doc. 51 ("Minute Order").  The USPO's Proposed Special Condition Number 4 provided: "The defendant must not possess or use a computer with access to any 'on-line computer service' at any location without prior written approval of the probation office.  The defendant must allow the probation officer to install appropriate software to monitor use of the internet."  Attachment A to the PSR, at 3.  The Court proposed editing the last line of that condition to add the words "that the Defendant owns."  Minute Order.  Proposed Special Condition Number 6 provided: "The defendant is restricted from engaging in an occupation where he has access to children, without prior approval from the probation officer." Attachment A to the PSR, at 3.  The Court proposed deleting the phrase "without prior approval of the probation officer."  Minute Order.

On July 27, 2011, the United States filed the United States' Response to Defendant's Objection to Proposed Condition of Supervised Release.  <u>See</u> Doc. 52 ("Response").  The United States points out that Largo does not object to the Proposed Special Condition Number 5 in total,

but objects to the condition to the extent that it prohibits contact with his three minor children, two daughters ages thirteen and eleven and a two-year old son, without his probation officer's prior approval.  See Response at 2-3.  The United States also notes that, in United States v. Edgin, the Tenth Circuit did not invalidate the condition completely, but asserted that conditions addressing relationships between parents and children should be "fine-tuned."  Response at 3.  The United States argues that the victim in this case was eleven-years old at the time of her abuse and was Largo's niece.  See Response at 3.  The United States asserts that the circumstances of the case, particularly the ages of his daughters, support the standard condition that the probation officer proposes.  See Response at 4.  The United States also contends that the condition is less onerous than the condition in United States v. Edgin, because Largo can have contact with his children if he seeks permission from his probation officer.  See Response at 4.

On July 27, 2011, the Court held a sentencing hearing.  At the hearing, the United States moved for the third-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and the Court granted the downward adjustment.  See Transcript of Hearing at 4:3-13 (July 27, 2011)(Court, Rozzoni, Winterbottom)("July 27, 2011 Tr.").[2]  The Court noted that, with that adjustment for acceptance of responsibility, the offense level is 38 and the criminal history category is I, establishing a guideline range of 235 to 293 months.  See July 27, 2011 Tr. at 4:12-15 (Court).  The Court asked the United States to provide any additional information in support of the substantial variance contained within the Plea Agreement.  See July 27, 2011 Tr. at 4:16-23 (Court).  The United States and Largo agreed that the Assistant United States Attorney could approach the bench and discuss its bases with the Court while white noise played in the courtroom.  See July 27, 2011

---

[2]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

Tr. at 4:24-5:9 (Court, Rozzoni, Winterbottom).  The United States then provided the Court with additional information in support of the Plea Agreement, and Largo then had an opportunity to speak in support of the Plea Agreement.  See July 27, 2011 Tr. at 9:14-15 (Court).  Largo again asserted that there were circumstances which cast doubt on J.L.'s veracity, including the note that his counsel received.  See Tr. at 9:19-24 (Winterbottom).  Largo represented that the note was handwritten, in what J.L. acknowledged was her handwriting, and given to Largo's wife.  See July 27, 2011 Tr. at 10:1-11:2 (Court, Winterbottom).  Largo stated that he believes that the note would be admissible at trial.  See July 27, 2011 Tr. at 11:2 (Winterbottom).  Furthermore, Largo argued that J.L. has become less and less committed to the prosecution.  See July 27, 2011 Tr. at 11:3-11 (Winterbottom).  Largo also asserted that the United States receives significant benefits from the Plea Agreement, because they receive a felony conviction and he will be incarcerated for a significant period of time.  See July 27, 2011 Tr. at 11:14-12:11 (Winterbottom).  Largo's counsel, Assistant Federal Public Defender Richard Winterbottom, also represented that he had spoken with the victim and that J.L. stated that the Plea Agreement is in compliance with her wishes.  See July 27, 2011 Tr. at 12:24-13:5 (Winterbottom).  Largo represented that the agreement was the result of significant negotiation and that he was giving up the opportunity to go to trial where there was a real possibility a jury would acquit him.  See July 27, 2011 Tr. at 13:6-19 (Winterbottom).  The United States reiterated that the Plea Agreement was the result of significant negotiation.  See July 27, 2011 Tr. at 16:21-24 (Rozzoni).  The United States also stated that it viewed this conviction and sentence as a better result than an acquittal.  See July 27, 2011 Tr. at 16:24-17:1 (Rozzoni).

In response to the Court's questions, Largo stated that, although J.L.'s mother would be returning to her home in White Horse, J.L. planned to remain living in Albuquerque, New Mexico. See July 27, 2011 Tr. at 15:7-21 (Court, Winterbottom).  Largo explained that the only other

children living at his house in White Horse are his three minor children.  <u>See</u> July 27, 2011 Tr. at 16:3-5 (Court, Winterbottom).  Largo represented that only one other child, J.L.'s four-year old half-brother, lives at the compound and that he lives there on a part-time basis.  <u>See</u> July 27, 2011 Tr. at 18:4-15 (Court, Winterbottom).  Largo stated that the other home-owners at the compound are all related to him through marriage: (i) his father- and mother-in-law, who have no children at their home; (ii) K.L., J.L.'s mother, who lives there part-time with her four-year old son; (iii) K.L.'s father, who has no children living at his home; and (iv) another of his wife's uncles, who has no children living at his home.  <u>See</u> July 27, 2011 Tr. at 18:20-19:6 (Winterbottom).

The Court then explained its Minute Order.  With regard to Proposed Special Condition Number 4, the Court explained that, consistent with its reading of <u>United States v. Mike</u>, 632 F.3d 686 (10th Cir. 2011), it needed to narrow that special condition to indicate that the software would go on computer equipment that Largo owns and not on all computer equipment to which Largo has access.  <u>See</u> July 27, 2011 Tr. at 19:13-20 (Court).  On Proposed Special Condition Number 6, the Court felt that the phrase "without prior approval of the probation officer" should be deleted, because that condition involves a significant liberty interest, and the Court was concerned about the USPO maintaining discretion with respect to that interest.  <u>See</u> July 27, 2011 Tr. at 19:21-20:8 (Court).  Largo explained that he was concerned with the word "access," but otherwise did not object to the amendment, because he is going to work on a ranch.  July 27, 2011 Tr. at 20:13-16 (Winterbottom).  The Court asked Largo to explain his concern.  <u>See</u> July 27, 2011 Tr. at 20:17-18 (Court).  Largo explained that, although his job does not involve working with children, it is conceivable that children might be there at some time.  <u>See</u> July 27, 2011 Tr. at 21:16-18 (Winterbottom).  The Court stated that it did not believe that the USPO or the United States would have a problem with Largo continuing to work at the ranch.  <u>See</u> July 27, 2011 Tr. at 21:19-20

(Court).  The Court explained that, if Largo has occasional contact with children, then the condition covers that contact and Largo must report that contact to his probation officer so that the USPO can determine whether that occasional contact is problematic.  See July 27, 2011 Tr. at 21:22-22:3 (Court).  Largo agreed that the Court's resolution was fair.  See July 27, 2011 Tr. at 22:4 (Winterbottom).

The Court then turned to Largo's objection to Proposed Special Condition Number 5.  Largo stated that he knew the condition was a standard one for his offense, but argued that the condition has not been "fine-tuned" as required under United States v. Edgin to take into account his liberty interests and the best interests of his children.  July 27, 2011 Tr. at 22:16-24 (Winterbottom).  Largo reiterated that, since he was indicted, he has been on pretrial release, and, during that period, he has had unsupervised contact with his children.  See July 27, 2011 Tr. at 22:25-23:4 (Winterbottom).  Largo also represented that his eldest daughter has been working with cattle on the same ranch where he works and that it would be a valuable experience for her to work alongside her father.  See July 27, 2011 Tr. at 23:4-10 (Winterbottom).  Largo acknowledged that the condition is motivated out of concern for the safety of children, but argued that the condition should not be used to cut off the relationship between a parent and his children.  See July 27, 2011 Tr. at 23:11-24 (Winterbottom).  Largo argued that the United States never objected to his contact with his children while he was on pretrial release.  See July 27, 2011 Tr. at 23:22-24 (Winterbottom).  Largo also asserted that the USPO will be monitoring him and that he is aware that he is going to be closely watched.  See July 27, 2011 Tr. at 24:1-12 (Winterbottom).  Largo stressed that he has a liberty interest in meaningful contact with his children.  See July 27, 2011 Tr. at 24:12-13 (Winterbottom).  Largo contended that United States v. Edgin directs district courts to fine-tune some conditions of supervised release to take into account a defendant's liberty interests.  See July 27, 2011 Tr. at

24:15-19 (Winterbottom).  Largo argued: (i) that his is an intact, nuclear family; (ii) that he has the

support of his family's minister who has been present for each of his courtroom appearances; (iii)

that his wife is dedicated to their children and lessens any risk of danger that the USPO may believe

he presents; and (iv) that there are no drugs or alcohol in his home.  See July 27, 2011 Tr. at 24:20-

25:22 (Winterbottom).  Largo asserted that nothing about his household indicates that the Court

needs to be especially concerned, that his children need their father, and that his time on pretrial

release has been an experimental period that has worked well.  See July 27, 2011 Tr. at 25:23-26:6

(Winterbottom).  Largo requested that the Court modify Proposed Special Condition Number 5 to

except his three children.  See July 27, 2011 Tr. at 26:7-9 (Winterbottom).

       The Court then clarified that, although its Minute Order referred to Proposed Special

Condition Number 6, it was referring to Proposed Special Condition Number 5.  See July 27, 2011

Tr. at 26:10-12 (Court).  The United States and Largo both stated that they did not understand that

the Court was referring to Proposed Special Condition Number 5 in its Minute Order.  See July 27,

2011 Tr. at 26:19-27:4 (Court, Winterbottom, Rozzoni).  The Court then asked whether, under

United States v. Mike, it should remove the phrase "without prior written permission of the

probation officer" from Proposed Special Condition Number 5.  July 27, 2011 Tr. at 27:17-25

(Court).  Largo stated that it made some sense to allow the probation officer to have some discretion

with respect to Largo's contact with children, other than his own biological children, because of the

busy docket that the Court maintains.  See July 27, 2011 Tr. at 28:4-8 (Winterbottom).  Largo

pointed out that there are advantages to a probation officer's discretion, because he or she will have

more contact with the defendant, enabling him or her to gauge the situation and act quicky.  See July

27, 2011 Tr. at 28:9-20 (Winterbottom).  Largo gave as an example his children's annual Christmas

pageant, where other children will also be present, and stated that probation would be able to

approve or disapprove of his attendance without the lengthy and burdensome process of returning to court.  See July 27, 2011 Tr. at 28:21-29:7 (Winterbottom).  Largo stated that he believes that the Court should modify Special Condition Number 5 to except his three children, but that otherwise he does not believe any change is necessary.  See July 27, 2011 Tr. at 29:8-14 (Winterbottom).  The Court asked what Mrs. Largo's occupation is.  See July 27, 2011 Tr. at 30:14-15 (Court).  Largo responded that she is a homemaker, who is at home all the time.  See July 27, 2011 Tr. at 30:16-19 (Court, Winterbottom).  Largo also stated that two of his children are now in school.  See July 27, 2011 Tr. at 30:19-20 (Winterbottom).

The USPO stated that it had no comments on Largo's objection.  See July 27, 2011 Tr. at 30:22-24 (Court, Garcia).  The United States asserted that it did not have any objections to the Court's modification of Proposed Special Condition Number 4, the computer condition, or Proposed Special Condition Number 6, the occupation condition.  See July 27, 2011 Tr. at 31:2-5 (Rozzoni).  With respect to Largo's Objection, the United States asserted that it relied on the phrase "without prior written permission of the probation officer" to demonstrate that the condition could be properly tailored to Largo, because the probation officer can examine whether it is appropriate for him to be around any children.  July 27, 2011 Tr. at 31:6-12 (Rozzoni).  The United States represented that the proposed condition became a standard condition that the District of New Mexico imposes after the adoption of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-245, 120 Stat. 587.  See July 27, 2011 Tr. at 31:12-14 (Rozzoni).  The United States argued that it believes that this condition is appropriate, because the victim in this case was eleven-years old and is a family member, which means that Largo's daughters, who are thirteen- and eleven-years old, could be at risk.  See July 27, 2011 Tr. at 31:15-20 (Rozzoni).

The Court then asked the USPO whether it interprets this special condition to prohibit

-11-

defendants from having unsupervised contact with their own children.  See July 27, 2011 Tr. at

31:22-24 (Court).  The USPO responded that, whenever a defendant subject to this condition is

going to have contact with any child, including his own children, the USPO requires that it be

informed and that the defendant seek written permission for that purpose.  See July 27, 2011 Tr. at

31:25-32:3 (Garcia).   The Court then asked whether the USPO routinely gave that written

permission.  See July 27, 2011 Tr. at 32:4 (Court).  The USPO responded that it would occasionally

grant that permission, depending on the circumstances.  See July 27, 2011 Tr. at 32:5-9 (Garcia).

With respect to Largo's children, the USPO stated that such a determination would be up to Don

Will, who is the USPO officer in Gallup, and that he would have to assess the situation after Largo

is released.  See July 27, 2011 Tr. at 32:10-15 (Court, Garcia).  The Court stated that, if the USPO

routinely grants permission and has a policy in place of doing so, then the proposed condition as

written does not seem to present a problem.  See July 27, 2011 Tr. at 32:16-22 (Court).  The Court

stated that, if, on the other hand, the USPO does not routinely grant permission, then there would

be some issues that the Court would likely need to address now at sentencing.  See July 27, 2011

Tr. at 32:23-33:1 (Court).  The USPO then offered to call one of the USPO's sex offender specialists

to address the issue more clearly.  See July 27, 2011 Tr. at 33:2-4 (Garcia).

While the USPO attempted to contact its sex offender specialist, Largo indicated that his

children were in the courtroom and would be willing to speak if the Court wished to question them.

See July 27, 2011 Tr. at 33:16-23 (Winterbottom).  The United States did not object to the Court

speaking with the children, but stated that the children could not speak to whether Largo should have

contact with them.  See July 27, 2011 Tr. at 34:1-8 (Rozzoni).  The Court then spoke to Largo's

daughters in a bench conference.  See July 27, 2011 Tr. at 34:14-17 (Court).  After the Court spoke

with Largo's daughters, the USPO informed the Court that Officer Will from the Gallup office was

present and that he would be the person supervising Largo.  See July 27, 2011 Tr. at 40:12-14 (Garcia).  The Court again asked whether the USPO interpreted this special condition as precluding unsupervised contact with his children.  See July 27, 2011 Tr. at 40:15-20 (Court).  Officer Will replied that, once Largo is released from the Bureau of Prisons, he would enter a treatment program in Gallup, and a doctor would conduct a psycho-sexual evaluation.  See July 27, 2011 Tr. at 40:21-3 (Will).  Officer Will explained that, if the doctor determined that Largo is not a risk, then probation would meet with the kids and the rest of the family to prepare them for what is happening.  See July 27, 2011 Tr. at 41:3-6 (Will).  He clarified that this process does not take place immediately and is very dependant on a defendant's progress during treatment.  See July 27, 2011 Tr. at 41:7-10 (Will). The Court then asked what happens before a defendant is allowed to have contact with his children. See July 27, 2011 Tr. at 41:11-14 (Court).  Officer Will stated that the USPO has had situations where defendants come out of prison and have to move into a separate residence, because there are children in the home.  See July 27, 2011 Tr. at 41:14-21 (Will).  Officer Will informed the Court that, to allow a defendant with this conviction to return to a home with children without a treatment plan from a doctor approving of this contact and stating that it is an acceptable risk, would not be prudent.  See July 27, 2011 Tr. at 41:22-25 (Will).  Given that the rule 11(c)(1)(C) Plea Agreement stipulated to sentence of 12-months and one-day of incarceration, and having already been incarcerated for three months, the Court asked whether it would be possible to do the psycho-sexual evaluation before sentencing.  See July 27, 2011 Tr. at 42:1-8 (Court).  The Court expressed concern because the time between sentencing and release has been collapsed so much that it does not make sense to wait until after Largo serves his sentence to perform the evaluation.  See July 27, 2011 Tr. at 42:1-8 (Court).  Officer Will responded that the USPO would prefer to operate in the manner that the Court suggested and that it would be beneficial to have defendants analyzed before sentencing.

See July 27, 2011 Tr. at 42:7-12 (Will).

The Court then asked Largo whether he would agree to postpone sentencing until after a psycho-sexual analysis is done. See July 27, 2011 Tr. at 42:15-18 (Court). Largo responded that it was within the Court's discretion to request that he receive the psycho-sexual analysis before sentencing and that it was legitimate for the Court to get as much information as it needed to rule on his Objection. See July 27, 2011 Tr. at 42:19-24 (Winterbottom). The Court then asked Officer Will how long it usually takes to obtain a psycho-sexual evaluation. See July 27, 2011 Tr. at 42:25-43:1 (Court). Officer Will replied that the evaluation usually does not take very long; it usually lasts six to eight hours, although the evaluation can take some time to set up. See July 27, 2011 Tr. at 43:2-7 (Will). Largo then requested that the Court appoint an independent psychologist to examine him, rather than one who will be involved in his supervised release. See July 27, 2011 Tr. at 43:8-14 (Winterbottom). The Court asked if Largo would have a problem with the USPO conducting an evaluation as well as having an independent evaluation. See July 27, 2011 Tr. at 43:19-20 (Court). Largo responded that he would object to having psychologists who are involved in his treatment process evaluating him, because there may be some bias, as Largo would be a potential client for those doctors. See July 27, 2011 Tr. at 45:2-6 (Winterbottom). Largo stated that an objective, outside contract psychologist would be preferable. See July 27, 2011 Tr. at 45:6-11 (Winterbottom). The United States expressed some concern about what would happen if the two evaluations were in conflict. See July 27, 2011 Tr. at 45:14-18 (Rozzoni). The Court clarified that the Court would act somewhat like a probation officer and review an evaluation from the USPO and, if Largo objects to the USPO evaluator's objectivity, another evaluation from an outside doctor. See July 27, 2011 Tr. at 45:19-46:4 (Court). After hearing that explanation, the United States asserted that it did not object to the Court's proposal. See July 27, 2011 Tr. at 46:5 (Rozzoni).

-14-

The Court determined that it should continue the hearing and ordered that two psycho-sexual evaluations be conducted.  See July 27, 2011 Tr. at 47:6-8 (Court).  The Court asked the USPO to arrange that one of the two people whom Largo identified, Dr. Samuel Roll or Dr. Eric Westfried, and someone that the USPO usually uses, conduct the evaluations.  See July 27, 2011 Tr. at 47:16-25 (Court, Winterbottom).  The Court indicated that it was inclined to accept the Plea Agreement, but would not enter the sentence at the hearing.  See July 27, 2011 Tr. at 50:12-25 (Court).

On November 30, 2011, the Court held another sentencing hearing.  The Court noted that, although the parties had been attempting to obtain a psycho-sexual evaluation before sentencing, it had now reached the point where it may not be possible to obtain such an evaluation before sentencing, because the Plea Agreement stipulated to a sentence of twelve months and one day of imprisonment.  See Transcript of Hearing at 3:20-4 (November 30, 2011)(Court)("Nov. 30, 2011 Tr.").  Largo stated that, when the parties last appeared before the Court, the case was in a different posture, because at this time, if the Court were to accept the Plea Agreement, he would have approximately eighty days left to serve.  See Nov. 30, 2011 Tr. at 5:4-13 (Winterbottom).  Largo proposed that the Court sentence him as soon as possible and that, with respect to his objection, the Court rule on information and pleadings before it.  See Nov. 30, 2011 Tr. at 5:14-18 (Winterbottom).  Largo stated that the understanding would be that, after he has the psycho-sexual evaluation as a matter of course when he begins his term of supervised release, the parties come back before the Court based on that evaluation to modify the conditions of supervision if necessary.  See Nov. 30, 2011 Tr. at 5:18-25 (Winterbottom).  Largo asserted that, if the parties waited for the psycho-sexual evaluation to occur before sentencing, then he might spend more time incarcerated than he might otherwise.  See Nov. 30, 2011 Tr. at 6:3-6 (Winterbottom).  Largo represented that, if the parties waited longer to sentence him, then the bureaucratic processes between the Bureau of Prisons and

the USPO may delay his release.  See Nov. 30, 2011 Tr. at 6:6-15 (Winterbottom).  The United

States agreed with Largo.  See Nov. 30, 2011 Tr. at 7:2-4 (Court, Rozzoni).  The USPO represented

that it attempted to calculate Largo's release date and estimated that he would be released around

February 18, 2012 because he has approximately fifty-four days of good time credit.  See Nov. 30,

2011 Tr. at 7:7-11 (Bohlken).

The Court stated that it believed it had pronounced the proposed sentence at the earlier

hearing.  Largo explained that the Court gave its inclination that it would accept the Plea Agreement,

but did not pronounce the proposed sentence.  See Nov. 30, 2011 Tr. at 7:22-24 (Winterbottom).

The Court asked Largo whether, if the Court sustained his Objection to Special Condition Number

5 and the subsequent evaluation was unfavorable, he would agree to reimposing the condition.

See Nov. 30, 2011 Tr. at 8:2-6 (Court).  Largo stated that he would.  See Nov. 30, 2011 Tr. at 8:7

(Winterbottom).  The Court expressed concern that it did not have a sufficient basis for imposing

the condition at this time.  See Nov. 30, 2011 Tr. at 8:8-15 (Court).  Largo clarified that he only

objects to the condition insofar as it relates to his own children and does not object to refraining

from contact with persons under the age of eighteen in general.  See Nov. 30, 2011 Tr. at 9:3-12

(Winterbottom).  The Court stated that it would carve out the exception for his children.  See Nov.

30, 2011 Tr. at 9:13-14 (Court).

## ANALYSIS

The Court concludes that the specific sentence to which the parties stipulated in the Plea

Agreement varies from the guideline sentencing range for justifiable reasons.  The Court therefore

accepts the Plea Agreement.  Additionally, the Court finds that the United States has not established,

on the record before the Court, that there are compelling reasons to justify interfering with Largo's

liberty interest in his familial relationship with his children.  The Court will therefore modify Special

Condition Number 5 of the conditions of supervised release to reflect that the prohibition on contact with children under the age of eighteen does not apply to Largo's own minor children.

I.    **THE COURT WILL ACCEPT THE PLEA AGREEMENT, BECAUSE, HAD THE CASE PROCEEDED TO TRIAL, THE WEAKNESSES IN THE UNITED STATES' CASE MAY HAVE RESULTED IN AN ACQUITTAL.**

The Court has reviewed the PSR's factual findings with care, and there not being any objections to those findings, the Court will adopt them as its own.  The Court has also considered the guideline calculation in the PSR, and there not being any objection to that calculation, the Court will adopt those as its own as well.  Additionally, the Court has considered the factors set forth in 18 U.S.C. § 3553(a)(1) through (7).  Largo's total offense level is 38 and his criminal history category is I, establishing a guideline imprisonment range of 235 to 293 months.  See PSR ¶ 54, at 12.

Under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, however, the Court accepts the Plea Agreement, which includes a specific sentence of 12-months and one-day.  See Plea Agreement ¶ 10(a), at 4.  The Court is satisfied that the agreed upon sentence departs for justifiable reasons.  The Court's ex parte conversation with the United States at the bench demonstrated that the United States would face significant difficulties if the case were to proceed to trial.  Furthermore, Largo convincingly argued that it could establish doubts about J.L.'s veracity, including producing a note that she allegedly wrote, and that J.L. is reluctant to proceed to trial.  See Largo Memorandum at 2-3.  The United States, in its sentencing memorandum, admitted that it would face significant evidentiary hurdles at trial to establish beyond a reasonable doubt that Largo committed the indicted acts.  See U.S. Memorandum at 2.  Although the Court recognizes that the Plea Agreement offers Largo a significant downward variance, the Court believes that, for the reasons stated on the record, in the briefings, and in its ex parte conversation with the United States, a variance is justified.

The Court notes that Largo inappropriately touched his eleven-year old niece on her breasts and genitalia with his hand underneath her clothing.  See Plea Agreement ¶ 8, at 3-4.  The Court has carefully considered the guidelines, but in arriving at its sentence, has taken into account not only the guidelines, but other sentencing goals.  Specifically, the Court has considered the guideline sentencing range for the applicable category of offense committed by the applicable category of defendant.  The Court does not believe that the punishment set forth in the guidelines is appropriate for this sort of offense.  The Court agrees with the parties that a sentence of 12-months and one-day, given the circumstances of this case, reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public.  Largo's crime is serious, and he should receive some punishment.  There is a lack of respect for the law if he receives no punishment, which is possible if the Court rejects the Plea Agreement and forces the parties to try the case.  While the Court is concerned whether the proposed sentence provides adequate deterrence on a specific or more general basis, some sentence is more just than no sentence.  Similarly, the Court is concerned whether the proposed sentence will adequately protect the public, but the conditions of release that a conviction will bring will help to protect the public.  Because of the conditions that the Court will impose as part of supervised release, Largo will receive some needed education, care, and training to prevent him from re-offending in the future.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  The Court believes that this sentence fully and effectively reflects each of the factors

embodied in 18 U.S.C. § 3553(a).  Moreover, this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court therefore sentences Largo to 12-months and one-day of imprisonment.

## II.    THE COURT WILL SUSTAIN LARGO'S OBJECTION TO SPECIAL CONDITION OF SUPERVISED RELEASE NUMBER 5 AND WILL NOT PROHIBIT LARGO FROM HAVING UNSUPERVISED CONTACT WITH HIS MINOR CHILDREN.

Largo objects to the proposed condition of supervised release, which states that "Defendant must not have contact with children under the age of 18 without prior written permission of the probation officer."  Objection at 1.  Largo has three children under the age of 18, and there are no allegations that he has abused his own children.  See Objection at 1.  Largo has two daughters, ages eleven and thirteen, and a two-year old son.  See PSR ¶ 42, at 10.  Largo cites United States v. Edgin, 92 F.3d 1044 (10th Cir. 1996) as support for his position and argues that the Tenth Circuit held that a special condition regarding a defendant's son implicates the defendant's liberty. See Largo Memorandum at 2-3.  At the July 27, 2011 hearing, Largo reiterated that, since he was indicted, he has been on pretrial release, and, during that period, he has had unsupervised contact with his children.  See July 27, 2011 Tr. at 22:25-23:4 (Winterbottom).  Largo argued that the United States never objected to his contact with his children while on he was pretrial release. See July 27, 2011 Tr. at 23:22-24 (Winterbottom).  Largo also stressed that he has a liberty interest in meaningful contact with his children.  See July 27, 2011 Tr. at 24:12-13 (Winterbottom).  Largo asserted that nothing about his household indicates that the Court needs to be especially concerned, that his children need their father, and that his time on pretrial release has been an experimental period that has worked well.  See July 27, 2011 Tr. at 25:23-26:6 (Winterbottom).  The United States argues that the victim in this case was eleven-years old at the time of her abuse and was

-19-

Largo's niece.  <u>See</u> Response at 3.  The United States asserts that the circumstances of the case, particularly the ages of his daughters, support the standard condition that the probation officer proposes.  <u>See</u> Response at 4.  The United States also contends that the condition is less onerous than the condition in <u>United States v. Edgin,</u> because Largo can have contact with his children if he seeks permission from his probation officer.  <u>See</u> Response at 4.  At the July 27, 2011 hearing, the United States again emphasized that it believes that this condition is appropriate, because the victim in this case was eleven-years old and is a family member, which means that Largo's daughters, who are thirteen- and eleven-years old, could be at risk.  <u>See</u> July 27, 2011 Tr. at 31:15-20 (Rozzoni).

In <u>United States v. Edgin</u>, a defendant challenged the portion of a special condition of supervised release preventing him from contacting his son, but not the portion of the special condition prohibiting from contacting his son's mother or her boyfriend.  <u>See</u> 92 F.3d at 1048, 1050. The Tenth Circuit emphasized that 18 U.S.C. § 3583(d)(2) requires conditions restricting a defendant's liberty to be "especially fine-tuned" to achieve the goals set forth in § 3553(a)(2)(B), (C), and (D).  <u>United States v. Edgin</u>, 92 F.3d at 1049.  The Tenth Circuit also held that the "special condition regarding Mr. Edgin's son implicates Mr. Edgin's liberty," because "a father has a fundamental liberty interest in maintaining his familial relationship with his son."  <u>United States v. Edgin</u>, 92 F.3d at 1049 (citing <u>Quillon v. Walcott</u>, 434 U.S. 246, 255 (1978)).  The Tenth Circuit then remanded the case to the district court for further findings and to determine whether it should fine-tune the supervised release condition.  <u>See</u> <u>United States v. Edgin</u>, 92 F.3d at 1050.  In <u>United States v. Smith</u>, 606 F.3d 1270 (10th Cir. 2010), the Tenth Circuit analyzed the imposition of a special condition in a case that even more closely resembles the case before the Court.  There, a defendant challenged the imposition of a condition barring him from contact with children and disabled adults.  <u>See</u> <u>United States v. Smith</u>, 606 F.3d at 1282.  The Tenth Circuit held that the

Honorable M. Christina Armijo, United States District Court Judge for the District of New Mexico, did not abuse her discretion when she imposed that condition, because she considered the defendant's rape of a sleeping woman to be a sexual attack on a vulnerable person.  See United States v. Smith, 606 F.3d at 1283.  The Tenth Circuit noted, however, that the condition could be read to prohibit the defendant's contact with his own minor child and that "special conditions that interfere with the right of familial association can do so only in compelling circumstances."  United States v. Smith, 606 F.3d at 1283.  While the Tenth Circuit recognized that "Smith has demonstrated a willingness and ability to prey on vulnerable individuals," it pointed out that "the record does not unambiguously support a finding that Smith is a danger to his own child or minor siblings."  United States v. Smith, 606 F.3d at 1283.  Although the Tenth Circuit affirmed Judge Armijo's imposition of the condition, it remanded for further proceedings as to whether the scope of the special condition included the defendant's own children.  See United States v. Smith, 606 F.3d at 1284.  In United States v. Mike, 632 F.3d 686 (10th Cir. 2011) aff'g in part and rev'g in part United States v. Mike, No. CR 07-1334, Memorandum Opinion and Order Sustaining in Part and Overruling in Part Defendant's Objections to Terms of Supervised Release, filed August 11, 2009 (Doc. 49)(Johnson, J.), the Tenth Circuit again analyzed the imposition of special conditions of supervised release.  The Tenth Circuit emphasized the defendant's psycho-sexual evaluations to support the imposition of certain sex-offense special conditions.  See United States v. Mike, 632 F.3d at 694.  There, the Tenth Circuit recognized that conditions which touch on significant liberty interests are "qualitatively different from those that do not."  United States v. Mike, 632 F.3d at 695 (citing United States v. Stoterau, 524 F.3d 988, 1005-06 (9th Cir. 2008)).

Like the defendant in United States v. Edgin, see 92 F.3d at 1050, Largo does not object to the imposition of the special condition except as it applies to his contact with his children, see Nov.

30, 2011 Tr. at 9:3-12 (Winterbottom).  Largo's relationship with his children involves a significant liberty interest which the Court may interfere with only under "compelling circumstances."  United States v. Smith, 606 F.3d at 1283.  The Court recognizes that Largo has pled guilty to sexual contact with his eleven-year old niece, J.L., and that J.L.'s age at the time of the offense is close to the ages of Largo's daughters.  See July 27, 2011 Tr. at 31:15-20 (Rozzoni).  The Court spoke to Largo's daughters in a bench conference at the July 27, 2011 hearing and has thoroughly reviewed the record in this case.  The Court cannot, however, find, on the record before it, that there is evidence that Largo has hurt his children or that he presents a specific danger to them.  While the Court finds that there is sufficient evidence in the record to show that Largo may present a danger to children generally, there is no evidence suggesting that Largo has harmed his own children in any way.  Additionally, the Court has not yet been able to obtain a psycho-sexual evaluation, which may help it determine whether Largo presents a danger to his children.  In United States v. Smith, the Tenth Circuit addressed similar circumstances and found that, while the defendant presented a danger to children generally, there was no evidence that he would harm his child.  See 606 F.3d at 1283.

The USPO's treatment of Largo's contact with his children up until this point further supports the Court's determination that, at this time, an exception to the special condition should be made so that it does not bar his contact with his children.  During his time on pretrial release, Largo has had contact with his children without objection from the United States.  See July 27, 2011 Tr. at 22:25-23:4 (Winterbottom).  The United States has not adequately articulated why there are "compelling circumstances" to now bar Largo from having contact with his children without the USPO's prior approval when the USPO did not object to the absence of such a restriction during his pretrial release.  Additionally, that Largo's wife is a homemaker, who does not work outside the home and who will likely be present for most of Largo's interactions with his children, addresses

-22-

some of the Court's concern about this contact.  See July 27, 2011 Tr. at 30:16-20 (Court, Winterbottom).  Largo also acknowledges the Court's authority to modify this condition and restrict his contact with his children should the psycho-sexual evaluation indicate that he presents a danger to them.  See Nov. 30, 2011 Tr. at 8:2-7 (Court, Winterbottom).  While Largo's representation of his willingness to modify the condition may not be legally enforceable, the Court has respect for Mr. Winterbottom, and if he says Largo will accept a modification, the Court takes him at his word.  A psycho-sexual evaluation may not always be necessary to determine whether this special condition should act to bar a defendant's contact with his children.  The Court believes that here, however, where there is no evidence, on the record before it, that Largo has harmed his children and the United States has not objected to Largo's significant contacts with his children during pretrial release, the Court cannot reasonably find that there are "compelling circumstances" to justify interfering with this liberty interest.  United States v. Smith, 606 F.3d at 1283.

Accordingly, the Court will sustain Largo's objection to Special Condition Number 5, and will modify it to create an exception allowing Largo to have contact with his own children without his probation officer's prior approval.

**IT IS ORDERED** that: (i) the requests that the Court accept the Plea Agreement, filed April 21, 2011 (Doc. 42), in the Defendant's Sentencing Memorandum, filed July 15, 2011 (Doc. 47) and the United States' Sentencing Memorandum, filed July 28, 2011 (Doc. 50), are granted; and (ii) the Objection to Proposed Condition of Supervised Release, filed July 19, 2011 (Doc. 49), is sustained. The Court accepts the Plea Agreement and sentences Defendant Damon Largo to 12-months and one-day of imprisonment.  The Court also modifies Special Condition Number 5 to indicate that it does not preclude Largo's contact with his own children.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Jennifer M. Rozzoni
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Richard A. Winterbottom
   Assistant Federal Public Defender
Federal Public Defender Office
Albuquerque, New Mexico

     *Attorney for the Defendant*